In re Tony Cleona COFFEY and Linda Elizabeth Coffey, Debtors.

Tony Cleona COFFEY and Linda Elizabeth Coffey, Plaintiffs,

v.

SOUTHEASTERN ENERGY, INC., Defendant.

Bankruptcy No. 3–81–00822.
Adv. No. 3–81–0875.

United States Bankruptcy Court,
E. D. Tennessee.

July 12, 1982.

Stone & Hinds, George F. Legg, Knoxville, Tenn., for plaintiffs.

James M. Crain, Knoxville, Tenn., for defendant.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

In this adversary proceeding the debtors seek to avoid a judicial lien held by Southeastern Energy, Inc., on real property claimed as exempt. 11 U.S.C. § 522(f)(1). The facts are as follows.

I

On September 12, 1975, the debtors purchased lots 14 and 15 in Swifton Village Subdivision, in Scott County, Tennessee, and on June 10, 1976, purchased two adjoining lots, Nos. 13 and 16. At all times pertinent, these lots were subject to a deed of trust held by First Trust & Savings Bank of Oneida, Tennessee.

On September 12, 1979, defendant, Southeastern Energy, Inc., obtained a judgment in the Chancery Court of Blount County, Tennessee, against the debtors (and Linda Coal Company, Inc.) in the amount of $4,403.39. Execution on this judgment was issued October 22, 1979, but the execution was never returned to the office of the Clerk and Master. On April 28, 1980, a certified copy of the judgment was recorded in the office of the Register of Deeds for Scott County, Tennessee, where the subject property is located. An alias execution was issued on August 21, 1980, and returned unsatisfied. On May 20, 1981, the debtors filed a petition in bankruptcy in this court. On May 28, 1981, in the Chancery Court for Scott County, Southeastern filed an action to subject the Scott County property to its judgment lien, specifically describing the subject property. On the same date a Notice of Lis Pendens was recorded with the Register of Deeds of Scott County.

On October 13, 1981, the debtors filed the present adversary proceeding and on October 19, 1981, moved to amend their schedule of exempt property to assert real property

exemptions under 11 U.S.C. § 522(d) instead of T.C.A. § 26–2–301.[1]

The real property involved in this litigation is and has been at all pertinent times the residence of the debtors.

## II

The debtors first challenge the validity of Southeastern's "judicial lien" but insist that, even if the lien is valid, it may be avoided under 11 U.S.C. § 522(f)(1).[2]

A "judicial lien" is defined in the Bankruptcy Code as any "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(27).

Tenn.Code Annotated § 25–5–101 sets forth the requirements to perfect a judgment lien in Tennessee upon land:

"25–5–101. Lien on land—How obtained.—(a) Judgments and decrees obtained before July 1, 1967, in any court of record of this state, in the county where the debtor resides at the time of rendition, shall be liens upon the debtor's land in that county from the time the same were rendered.

(b) Judgments and decrees obtained from and after July 1, 1967, in any court of record . . . shall be liens upon the debtor's land from the time a certified copy of said judgment or decree shall be registered in the lien book in the register's office of the county where the land is located. If said records are kept elsewhere, no lien shall take effect from the rendition of said judgments or decrees unless and until a certified copy of same are registered as otherwise provided by law."

T.C.A. § 25–5–102 states that a judgment or decree shall not bind the equitable interests of a debtor in real estate or other property until a memorandum or abstract of the judgment or decree is certified by the clerk and registered in the register's office where the real estate is situated.

T.C.A. § 25–5–104 states the lien shall cease unless a bill in equity to subject the debtor's interest is filed within thirty (30) days from the return of the execution unsatisfied.

T.C.A. § 25–5–105 states that the lien will be lost unless an execution is taken out and the land sold within twelve (12) months after the rendition of the judgment or decree. T.C.A. § 25–5–106 extends this period if the sale is prevented by an injunction or an appeal.

In challenging the validity of the defendant's lien, the debtors assert that Southeastern failed to file a bill in equity "within thirty (30) days from the return of the execution unsatisfied," T.C.A. § 25–5–104. Thus, the debtors insist that the lien has been lost by the express provisions of that section. Southeastern responds that T.C.A. § 25–5–104 and 105 have no application to the factual situation presented by this cause, since the limitations upon liens of judgment apply only to priorities among judgment creditors and/or bona fide purchasers and were never intended and have never been construed to provide protection for the property of a judgment debtor. Southeastern's brief, December 15, 1981.

It does not appear necessary to determine whether Southeastern's argument is correct. Under 11 U.S.C. § 544 the trustee is both a judgment lien creditor, sub. a(1), and a bona fide purchaser of real property, sub.

---

1. The change in the debtors' exemptions was the result of a decision on September 22, 1981, *Rhodes v. Stewart*, 14 B.R. 629, (Bkrtcy.M.D. Tenn.1981), wherein Judge Hippe held that T.C.A. § 26–2–112 (The Tennessee Opt-out Statute) was invalid, the Tennessee legislature having exceeded the authority granted to it by 11 U.S.C. § 522(b)(1). Judge Hippe's decision is now on direct appeal to the Sixth Circuit Court of Appeals.

2. "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (1) a judicial lien; . . ." 11 U.S.C. § 522(f)(1).

a(3).[3]  Also, § 522(h) permits the debtor to avoid any transfer which the trustee could have avoided to the extent that the debtor could have exempted such property under § 522(g),[4] if the trustee had avoided the transfer.[5]

The intended purpose of § 522(g) is expressly stated in the legislative history:

"Subsection (g) provides that if the trustee does not exercise an avoiding power to recover a transfer of property that would be exempt, the debtor may exercise it and exempt the property, if the transfer was involuntary and the debtor did not conceal the property.  If the debtor wishes to preserve his right to pursue any action under this provision, then he must intervene in any action brought by the trustee based on the same cause of action.

It is not intended that the debtor be given an additional opportunity to avoid a transfer or that the transferee should have to defend the same action twice. Rather, the section is primarily designed to give the debtor the rights the trustee could have, but has not, pursued.  The debtor is given no greater rights under this provision than the trustee, and thus, the debtor's avoiding powers under proposed sections 544, 545, 547, and 548, are subject to proposed 546, as are the trustee's powers."  Senate Report No. 95–989, 95th Congress, 2d Session, pp. 76, 77, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 5863.

Based on the undisputed facts of this case, Southeastern's lien as against the trustee has been lost.  Southeastern did not proceed as required by T.C.A. § 25–5–104 and 105.  The trustee, standing in the shoes of a judgment lien creditor and a bona fide purchaser for value, 11 U.S.C. § 544(a)(1), (3), could have avoided the lien.  Furthermore, since the trustee took no action, the debtor may do so under the specific provisions of the Bankruptcy Code:

"The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
(B) the debtor did not conceal such property; ..." 11 U.S.C. § 522(g)(1).

---

3.  "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

.   .   .   .   .

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(1), (3).

4.  "(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

5.  "(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—
(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law."
11 U.S.C. § 522(b).

(g)(1) of this section if the trustee had avoided such transfer, if—

> (1) such transfer is avoidable by the trustee under section 544 ...; and
> (2) the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h).

Thus, Southeastern's judicial lien may be avoided by the debtors if such lien impairs an exemption to which they are entitled.

## III

The debtors initially claimed homestead exemptions allowed under the State statute,[6] but after Judge Hippe's decision in *Rhodes v. Stewart, supra*, they filed an application to amend to claim a real property exemption pursuant to 11 U.S.C. § 522(d)(1) in the amount of $10,000.[7]

It appears the debtors' interest in the real property is $9,000.00 over and above the Bank's first lien. Thus, if T.C.A. § 26–2–301 applies, the debtors' exemptions would total $7,500. If application of § 522(d)(1) and (m) of the Bankruptcy Code is permissible, the debtors could claim their full interest in the property, $9,000.

Defendants insist that while the bankruptcy law permits liberal amendments of claims and interests, it is contrary to the principles of law and equity "to permit a person to lull his adversaries into silence and, having obtained their consent, increase his demands at a time when this increase is unlikely to be known to the vast majority of his creditors."

"If Plaintiffs should argue that the infirmity of T.C.A. 26–2–112 [the opt-out provision] was unknown to them at the time of filing this Petition, such claim would merely show that any improvidence in their selection was purely a mistake of law, for which the courts will not generally grant relief." Defendants' Brief, December 15, 1981.

In *McLemore v. Crawford*, Adv.Proc.No. 2–81–0228 (Bkrtcy.M.D.Tenn., 1982), Judge Jennings denied a debtor's application to change his exemptions, both as to property claimed as exempt and as to the election of the exemption statute, *after* the 15-day period expired.[8] *In re Brewer*, 17 B.R. 186 (Bkrtcy.M.D.Tenn., 1982), Judge Paine denied the debtors the right to change their election of applicable exemption laws from state to federal. Upon appeal, Chief Judge Morton affirmed the decision of the bankruptcy judge in *Brewer* and dismissed the appeal:

> " 'This is an appeal from the determination by the Bankruptcy Judge that after the passage of a substantial amount of time and the action by the Trustee in Bankruptcy settling the rights of credi-

---

6. "Schedule B–4. Property Claimed as Exempt.

Real property (house) Rt. 1, Box 157–T, Helenwood, TN. Senate Bill No. 1346 $7500.00."

"Basic exemption.—(a) An individual, regardless of whether he is head of a family, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by him, his spouse, or a dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000). Provided, however, individuals who jointly own and use real property as their principal place of residence shall be entitled to homestead exemptions, the aggregate value of which exemptions combined shall not exceed seven thousand five hundred dollars ($7,500), which shall be divided equally among them in the event said homestead exemptions are claimed in the same proceeding." T.C.A. 26–2–301.

7. Sec. 522(d)(1) permits a debtor to claim his aggregate interest, not to exceed $7500 in value, in real property or personal property that the debtor uses as a residence. Sec. 522(m) states that this section shall apply separately with respect to each debtor in a joint case. Apparently the debtors believe their total interest in the property over and above the lien is less than $10,000. (Debtors value the real property at $59,000.00. The Bank's lien is approximately $50,000.00.)

8. Sec. 522(*l*) provides that the debtor shall file a list of property claimed as exempt and then provides that "unless a party in interest objects, the property claimed as exempt on such list is exempt." The standard order entered in this court (and the Middle District of Tennessee) requires objections to the debtor's claim of exempt property to be filed within 15 days after the Sec. 341 meeting of creditors.

tors, it was too late for the Bankrupt to amend his schedules to assert exemptions under the federal law as distinguished from exemptions under the state law. After a full and complete consideration of the facts in this case and the determination made by the Bankruptcy Court, the court is of the opinion that the Bankruptcy Judge made the proper decision and the case should be affirmed. The opinion of the Bankruptcy Judge is made a part hereof as fully as if copied herein. The appeal will be DISMISSED.'" *In re Brewer, supra.*

Although as a general proposition this court agrees with the decisions of the district and bankruptcy judges in the Middle District of Tennessee, those decisions will not be applied in the instant case due to the uncertainty that has prevailed since the enactment of the Code. As plaintiff correctly points out, bankruptcy laws and other laws relating to exemptions have always been liberally construed. Pending a decision by the Sixth Circuit Court of Appeals, the debtors' homestead exemption will be limited to $7,500.00. If the *Rhodes* decision is affirmed on appeal, the debtors may avail themselves of the Federal exemptions of their equity in the property, to wit, the sum of $9,000.00. In order to implement this decision, the debtors forthwith will deposit into the registry of this court the sum of $1,500.00. This sum, depending upon the decision of the Sixth Circuit, either will be paid hereafter to Southeastern or refunded to the debtors.

## IV

Southeastern avers that the debtors' property consists of "three distinct residential tracts," each one capable of containing a residence, and that the central tract (composed of two lots) is, in and of itself, of sufficient value to exhaust the debtor's homestead exemption without reference to the adjoining lots. Southeastern submits that it would be contrary both to the letter and spirit of the law to permit the debtors an exemption covering all four lots. The proof is clear, however, that the four lots comprise the "homestead"—the residence is on two lots, a driveway runs across another lot, and a water line crosses the other. Southeastern's suggestion that its lien be avoided only as to lots 14 and 15 is rejected.

Southeastern also refers to the procedure in Tennessee to set apart the homestead exemption.[9] In view of the court's ultimate determination, however, it is not necessary to discuss these statutes or to resort to the procedures set forth therein.

## V

Southeastern's judicial lien will be avoided to the extent that such lien impairs an

**9.** "Procedure to set apart.—Whenever real property of an individual who is entitled to a homestead exemption thereon is levied on by execution or attachment, the individual's homestead shall be set apart in the following manner:
 (1) The officer executing the writs shall summon three (3) disinterested freeholders, not connected with the parties, and administer to them an oath to set apart the homestead out of the real estate so levied on;
 (2) Said freeholders shall examine the premises and upon oath set apart said homestead, if so desired by the individual entitled to the exemption, and set out in writing the boundaries thereof, and certify that such is the homestead set apart by them, and deliver the same to the debtor;
 (3) The remainder only of such lands so levied on or attached shall be subject to sale, which fact shall be returned on the execution. [Acts 1870, ch. 80, § 3; 1879, ch. 171, § 3; Shan., § 3804; Code 1932, § 7725; Acts 1979, ch. 61, § 6; T.C.A., § 26–309.]" T.C.A. § 26–2–308.
 "Sale and reinvestment of exempt proceeds.—When the real estate levied on is of greater value than five thousand dollars ($5,000), and is so situated that it cannot be divided so as to set apart the homestead, the freeholders shall certify the fact, and the officer may proceed to sell the whole tract, and out of the proceeds he shall pay to the clerk of the court rendering the judgment, or condemning the land for sale, five thousand dollars ($5,000), to be by him invested under the order of the court, in the purchase of a homestead for said debtor, and only the surplus over and above five thousand dollars ($5,000), shall be applied to the payment of said execution. [Acts 1870, ch. 80, § 4; Shan., § 3805; Code 1932, § 7726; impl. am. Acts 1933, ch. 72, § 1; C.Supp. 1950, § 7726; Acts 1979, ch. 61, § 7; T.C.A., § 26–310.]" T.C.A. § 26–2–309.

exemption to which the debtors would have been entitled if such lien did not exist. 11 U.S.C. § 522(f)(1). Southeastern's lien is and always has been subordinate to the first mortgage held by the Bank in the approximate sum of $50,000.00. Thus, at no time has Southeastern's lien had a value of more than $9000.00, the debtor's equity in the property over and above the mortgage debt.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Submit judgment.