**In re DeCarlos M. WALLER and Lailta A. Waller, Debtors.**

No. 08–59709.

United States Bankruptcy Court, S.D. Ohio, Eastern Division,

Feb. 23, 2010.

---

Laurence B. Landon, Columbus, OH, for Debtor.

Susan L. Rhiel, Columbus, OH, for Trustee.

***MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S OBJECTION AND AMENDED OBJECTION TO DEBTORS' CLAIM OF EXEMPT PROPERTY***

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

This case requires the Court to determine whether it is appropriate to deny an exemption in tax refunds claimed by DeCarlos M. Waller and Lailta A. Waller ("Debtors") because of a dispute between the Debtors' counsel and Susan L. Rhiel, Chapter 7 trustee ("Trustee"), over who should calculate the amount of the exemption. At stake is $8,969. For the reasons set forth below, the Court **OVERRULES** the Trustee's objection to the Debtors' exemptions.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

## II. Factual and Procedural Background

The Debtors filed a voluntary Chapter 7 petition on October 9, 2008. On their initial Schedule B (Personal Property) and Schedule C (Property Claimed as Exempt), the Debtors neither listed nor claimed an interest or exemption in any tax refund. On November 14, 2008, four days before the scheduled meeting of creditors,[1] the Debtors filed amended Schedules B and C ("First Amendment") (Doc. 13). Amended Schedule B listed "Possible 2008 Tax Refunds" in the amount of $4,100. Amended Schedule C declared exemptions in "Possible 2008 Tax Refunds" in the following amounts: $1,750 claimed under Ohio's "wildcard" exemption as set forth in Ohio Revised Code § 2329.66(A)(18); $650 claimed under § 2329.66(A)(3) for tax refunds generally; and an "unknown" amount claimed for an earned income tax credit under § 2329.66(A)(9)(g).[2] There were no objections to the First Amendment.

On November 24, 2008, the Trustee filed a motion to require the Debtors to file income tax returns and to turn over to her any resulting tax refunds. An order granting the motion was entered December 22, 2008 ("Tax Order") (Doc. 21). Also

---

1. A debtor must appear and submit to examination under oath at a meeting of creditors (" § 341 meeting"). *See* 11 U.S.C. §§ 341, 343.

2. Ohio Revised Code § 2329.66(A)(9)(g) (West 2009) permits a debtor to exempt payments attributable to the earned income tax credit provided for by 26 U.S.C. § 32.

on November 24, the Trustee filed a motion to extend the time to object to the Debtors' discharge to May 31, 2009 (Doc. 16). The basis of her motion was to ensure compliance with the Tax Order. The motion to extend time to object to the Debtors' discharge was granted by order entered December 29, 2008 (Doc. 25).

The Debtors prepared and filed separate tax returns in early February 2009 and provided copies of the returns to the Trustee. Refund checks totaling $10,200 were sent directly to the Trustee by the taxing authorities pursuant to the Tax Order. She is currently holding the funds pending the outcome of this dispute.

On May 12, 2009, the Debtors again filed amendments to Schedules B and C ("Second Amendment") (Doc. 28) to add one bank account and delete another and to claim an exemption of $50 in the added bank account. The Second Amendment did not change the information previously disclosed concerning the tax refunds. Nonetheless, on May 20, 2009, the Trustee filed an objection ("Original Objection") (Doc. 29) to the Debtors' exemption for the earned income tax credit claimed under § 2329.66(A)(9)(g), on the ground that she was unable to calculate an "unknown" exemption. Two days later, she filed an amended objection ("Amended Objection") (Doc. 30) to encompass the exemptions claimed under § 2329.66(A)(3) and (A)(18) as well, and asked that all of the tax-related exemptions be denied in their entirety. In the Amended Objection, the Trustee asserted that "[o]n May 13, 2009, *for the first time,* the Debtors filed Amended Schedules adding the tax refunds as an asset on Schedule B and claiming exemptions on Schedule C (including

an exemption in an 'unknown' amount despite the fact that the returns had been filed months before and the amount was readily ascertainable.)." Amended Objection at 1 (emphasis added).

The Debtors filed a response ("Response") (Doc. 31) disputing the Trustee's assertion regarding the timing of the claimed exemptions and noting that the anticipated tax refunds were disclosed in the First Amendment, which was filed on November 14, 2008, four days before the § 341 meeting. The amount of the anticipated tax refund was listed as "unknown" in the First Amendment because, in November 2008, their tax returns for 2008 were neither prepared nor due, and the amount of any refund was, in fact, unknown. The Response further stated that the tax returns forwarded to the Trustee, in compliance with the Tax Order, identified both the amount of the refund and the earned income tax credit. In addition, the Debtors argued that nothing in their conduct exhibited bad faith or an intent to defraud the Trustee or creditors. Finally, the Debtors pointed out that schedules may be freely amended while a case is pending so long as a debtor is not acting in bad faith or concealing assets.

Following a hearing on the Amended Objection and the Response ("Hearing"), the Debtors again filed amendments to Schedules B and C ("Third Amendment") (Doc. 39). In the Third Amendment, the Debtors listed on Schedule B (line 18) "2008 Tax Refunds" in the amount of $10,642.[3] Schedule C was amended to delete the claimed exemption of $650 under § 2329.66(A)(3), and to change the exemption for the earned income tax credit under § 2329.66(A)(9)(g) from "Unknown" to

---

**3.** The parties did not offer an explanation as to why there is a discrepancy between the amount of funds the Trustee stated that she is holding ($10,200) and the amount listed in

Schedule B of the Third Amendment ($10,-642). It is the claimed exemption amount, however, that is critical to the outcome here.

"$7219.00." The exemption claimed under § 2329.66(A)(18) remained unchanged at $1,750. The Third Amendment prompted another objection by the Trustee ("Renewed Objection") (Doc. 40). In the Renewed Objection, the Trustee made the following argument:

> The Trustee objects given the timing of the amendment as addressed at the hearing on this matter. This case is in a closing posture. The information contained in this now third amendment was known to the Debtors in February 2009. Following the hearing on August 4th, the Court indicated [that it] would be taking this matter under advisement. Now, eight days later, the Debtors amend their exemption for the third time, resulting in further cost to the Debtors, the Trustee, and the Court. The Trustee requests, given the facts of this case, that the Debtors' exemptions in the tax refunds be denied in their entirety.

Renewed Objection at 1.

The Debtors filed a response to the Renewed Objection ("Renewed Response") (Doc. 41) in which they state that they amended the schedules "to make it easier for the Trustee, Court or any other interested party, to calculate the amount of non-exempt equity in assets and to claim their exemptions allowed by law." Again, the Debtors asserted that Fed. R. Bankr.P. 1009(a) permits a debtor to amend his/her schedules at any time before a case is closed.

### III. Legal Analysis

The filing of a petition under the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

*See Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) ("An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions."). Although the scope of § 541(a)(1) is expansive, *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), "[f]ederal bankruptcy law allows a debtor to exempt some of his property— mainly basic necessities—from the bankruptcy estate. The exemptions can afford the debtor some economic and social stability, which is important to the fresh start guaranteed by bankruptcy." *Sheehan v. Morehead (In re Morehead)*, 283 F.3d 199, 202–03 (4th Cir.2002) (citing *Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554– 55, 35 S.Ct. 289, 59 L.Ed. 713 (1915)). *See* 11 U.S.C. § 522(b); *Rousey v. Jacoway*, 544 U.S. 320, 325, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values." (citations omitted)); *Owen*, 500 U.S. at 308, 111 S.Ct. 1833 ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. Section 522 determines what property a debtor may exempt."); *Holland v. Star Bank, N.A. (In re Holland)*, 151 F.3d 547, 548 (6th Cir.1998) ("The Bankruptcy Code allows debtors to exempt certain property from the bankruptcy estate."); *Storer v. French (In re Storer)*, 58 F.3d 1125, 1127 (6th Cir.1995) (same). Exemptions "give the debtors a so-called 'grub-stake' to begin their fresh start and ... act as a safety net, so that the debtor and his family are not completely impover-

ished due to creditor collection action or bankruptcy such that they become wards of the state." *In re Robinson*, 292 B.R. 599, 606 (Bankr.S.D.Ohio 2003) (internal quotation marks omitted).

Section 522(b)(1) of the Code offers a debtor the choice between exempting the property specified in § 522(d) or utilizing the exemptions provided by federal non-bankruptcy law or state law "unless the State law that is applicable to the debtor ... specifically does not so authorize[.]" 11 U.S.C. § 522(b)(1). Because Ohio has chosen to "opt out" of the federal exemption scheme, the Debtors are limited to the exemptions provided under Ohio law.[4] *See Storer*, 58 F.3d at 1127 ("Ohio has replaced the federal exemptions with its own state exemptions, which are those generally available to debtors under Ohio's general debtor-creditor law.").

■ Upon the filing of a bankruptcy petition, or within 15 days thereafter, a debtor must file schedules of assets and liabilities. *See* 11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr.P. 1007(b)(1)(A) and (c). Among the required schedules is a list of property that the debtor claims as exempt under 11 U.S.C. § 522(b).[5] Section 522(*l*) provides that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). Objections to a debtor's claims of exemptions must be filed within 30 days after the conclusion of the § 341 meeting. Fed. R. Bankr.P. 4003(b). The party objecting to an exemption—here, the Trustee—has the

burden of proving that the exemption is not properly claimed. *See* Fed. R. Bankr.P. 4003(c) ("A party in interest may file an objection to the list of property claimed as exempt...."); *Robinson*, 292 B.R. at 612 n. 9. "The [T]rustee, as the objecting party, has the burden of producing evidence which rebuts the *prima facie* presumption that the exemption is correct." *In re Mann*, 201 B.R. 910, 915 (Bankr.E.D.Mich.1996) (citing *Lester v. Storey (In re Lester)*, 141 B.R. 157, 161 (S.D.Ohio 1991)). *See also In re Rhinebolt*, 131 B.R. 973, 975 (Bankr.S.D.Ohio 1991) ("The initial burden of producing evidence to rebut the propriety of a claimed exemption rests on the objecting party." (citing Fed. R. Bankr.P. 4003(c))).

■ "A party objecting to claimed exemptions must prove that the exemption is not properly claimed by a preponderance of the evidence." *In re Roselle*, 274 B.R. 486, 490 n. 4 (Bankr.S.D.Ohio 2002) (citing Fed. R. Bankr.P. 4003(c)). *See also Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 723 (6th Cir. BAP 1999) ("The burden is on the trustee to establish, by a preponderance of the evidence, that the exemption should be disallowed."). "Upon the introduction of sufficient evidence to rebut the *prima facie* validity of the exemption, the burden shifts to the debtors to demonstrate that the exemption is proper." *Rhinebolt*, 131 B.R. at 975. If, however, "the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *Mann*, 201 B.R. at 915

---

**4.** Ohio Revised Code § 2329.662 provides:

Pursuant to the "Bankruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C.A. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the "Bank-

ruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C.A. 522(d).

Ohio Rev.Code Ann. § 2329.662 (West 2010).

**5.** Property claimed as exempt must be listed on Official Bankruptcy Form 6C, known as Schedule C. *See* Fed. R. Bankr.P. 9009.

(citing *In re Baumgardner,* 160 B.R. 572, 573–74 (Bankr.S.D.Ohio 1993)).

■■■ A debtor has the general right to amend his or her schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a). *See also In re Millsaps,* 774 F.2d 1163 (table), 1985 WL 13737 at *1 (6th Cir. Sept.30, 1985). This right is not unfettered, however, and "[c]ourts may still refuse to allow an amendment where the debtor has acted in bad faith or where property has been concealed." *Lucius v. McLemore,* 741 F.2d 125, 127 (6th Cir.1984). A court will examine the totality of the circumstances to determine bad faith, which often is predicated on a debtor's attempt to conceal assets. *See Robinson,* 292 B.R. at 609. "Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence." *Corcoran v. Publow,* 418 B.R. 231, 235 (E.D.Mich.2009) (internal quotation marks omitted).

■■■ A court also may conclude that it is not appropriate to allow an amendment if the amendment would result in prejudice to creditors. *See Robinson,* 292 B.R. at 608 ("Even in the absence of bad faith or concealment of property, an amendment might not be allowed if the objecting party could show a resulting prejudice to creditors." (internal quotation marks omitted)); *In re Shepard,* 2008 WL 3992806 at *2 (Bankr.E.D.N.C. Aug.25, 2008) ("[An] amendment is not permitted where . . . the amendment would prejudice creditors."). Delay in filing an amendment, however, does not alone constitute prejudice to creditors. *See Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (11th Cir.1982).

■■■ At the Hearing, the Trustee acknowledged that this was not a case where debtors concealed property of the estate. Nor did she allege that these debtors acted in bad faith. Instead, she argued that the Debtors did not act in good faith because they failed to properly disclose, or timely and accurately amend their schedules to properly claim an exemption in the tax refunds. The Trustee's argument that the Debtors have not acted in good faith boils down to the fact that they filed schedules disclosing tax refunds in incorrect amounts and claiming exemptions in amounts that were "unknown," which created additional work for her. She argued that it is not her duty—as a panel trustee acting on behalf of the estate—to calculate an appropriate exemption amount; rather, it is the responsibility of debtor's counsel, who is compensated for performing those services.[6]

In response, the Debtors' counsel argued that the claimed exemptions were clarified prior to the § 341 meeting and that the Trustee had adequate notice of those exemptions. In addition, the Debtors testified at their § 341 meeting that they expected a refund. The Debtors' tax returns were sent to the Trustee pursuant to the Tax Order and amended schedules were filed in May 2009 to disclose a bank account. The Debtors' counsel argued that because the Trustee had the tax returns for several months before she received the actual refunds, she easily could have calculated the amount of the earned income tax credit exemption.

Upon review of the record, the Court finds that the Trustee falls far short of meeting her burden of proving that the

---

**6.** The Debtors' counsel received $1,500 to represent them in connection with their bankruptcy case.

Debtors' exemptions are not properly claimed. At the Hearing, no evidence of bad faith, concealment or even improper disclosure, as alleged, was offered. In fact, the Trustee did not call the Debtors to testify, although they were present at the Hearing. In addition, the Trustee has not established any prejudice to creditors resulting from the Debtors' amended exemptions. First, the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Doc. 9), which was served on all parties in interest, advised creditors that there were no assets and they did not need to file claims unless otherwise notified. Second, the First Amendment—in which the Debtors disclosed the possible refunds and claimed them exempt—was filed before the § 341 meeting. Although the Trustee served a notice to file claims on November 27, 2008, and proofs of claims were filed, no distributions have been made on those claims. *See In re Fournier*, 169 B.R. 282, 284 (Bankr.D.Conn.1994) ("No prejudice to creditors can be found here where the notice of commencement of case mailed to creditors stated that this was a no-asset case, the trustee learned early in the case at the first meeting of creditors of the existence of the pending personal-injury action, and the proceeds from compromise of the claim had not been distributed to creditors before the debtor amended his exemption schedule."). In short, the Trustee has failed to provide a legally cognizable basis for disallowance of the Debtors' claimed exemptions.

Nor is the Debtors' omission of the tax refunds and the exemptions from their original schedules particularly troubling under the facts presented in this case. Other courts have recognized that such an omission from the schedules as originally filed typically does not arise from intentional misconduct, but rather "is almost always the result of 'attorney oversight' or 'miscommunication' between the attorney and client...." *See In re Davis,* 38 B.R. 585, 587 (Bankr.M.D.Tenn.1984); *see also In re Cinelli,* 2006 WL 3545444 at *3 (Bankr.N.D.N.Y. Dec.8, 2006) (citing *Davis,* 38 B.R. at 587). On their own accord and without prompting by anyone other than their own counsel, the Debtors promptly disclosed the anticipated refunds and claimed their exemptions—prior to the § 341 meeting—by way of the First Amendment. In the Amended Objection, the Trustee concedes that she "received copies of the Debtors' 2008 tax returns by letter dated February 9, 2009." By no later than May 2009, both the Trustee and Debtors' counsel knew (1) the amount of the Debtors' refunds and (2) the exact amount of the Debtors' earned income tax credit. Armed with this information, the amount of the Debtors' exemption in the refunds was readily calculable. Neither counsel nor the Trustee, however, chose to calculate the amount of the Debtors' exemptions prior to the Hearing. But counsel for the Debtors did so after the Hearing.

Based on the scant evidentiary record made at the Hearing, the Court can only assume that the Debtors provided the information to their counsel so that he could adequately complete the original schedules and all amendments. The Debtors prepared their tax returns and mailed copies to the Trustee. The Trustee actually received the tax refunds directly from the taxing authorities, and, to this day, holds those funds in a trust account. From the Court's perspective, the Debtors did everything necessary to perform the duties required of them under the Bankruptcy Code. Yet, if the Trustee's objections are sustained, the Debtors' exemptions would be forfeited, thereby limiting the fresh

start to which they are entitled. To deny the Debtors their exemptions because of a standoff between their counsel and the Trustee is unconscionable and not an appropriate use of the bankruptcy process.

It is clear that both the Debtors' counsel and the Trustee bear some responsibility for the course of events that gave rise to this dispute. Debtors' counsel failed to fully and promptly amend the schedules to accurately disclose the amount of the tax refunds and exemptions once known, i.e., at the time he provided the Trustee with copies of the tax returns. His glib remark at the Hearing—that it was just as easy for the Trustee to do the calculation—did not serve his clients well. And the Trustee was certainly justifiably frustrated by Debtors' counsel's cavalier attitude toward his responsibilities. On the other hand, in the amount of time it took the Trustee to prepare and file the Original Objection, the Amended Objection and the Renewed Objection, and then to prepare for and attend the Hearing, she easily could have calculated the amount of the Debtors' exemptions and returned the exempt portion of the refunds to them. The Court recognizes that this is technically not the responsibility of a Chapter 7 trustee, but questions whether, in this instance, it was a reasonable use of her time and the estate's resources to prosecute her objections to the Debtors' exemptions when it was clear that the Debtors were not at fault. In this division of the Court, many trustees submit a standard tax return/tax refund order that requires taxing authorities to send refunds directly to the trustees.[7] Having reviewed numerous final reports and requests for attorney and trustee fees in Chapter 7 cases, the Court notes that trustees often calculate exemption amounts in connection with their administration of tax refunds. True, counsel for Chapter 7 debtors should not attempt to shift the chore of calculating exemption amounts to panel trustees. But, given the fact that many Chapter 7 trustees routinely undertake this task, the Court cannot conclude that Debtors' counsel's expectation that the Trustee would do so in this case was manifestly unreasonable.

## IV. Conclusion

For the foregoing reasons, the Court **OVERRULES** the Original Objection, the Amended Objection and the Renewed Objection and **ALLOWS** the Debtors' claimed exemption in the tax refunds. The Trustee is **DIRECTED** to turn over exempt portion of the tax refunds to the Debtors within seven days after entry of this order.

**IT IS SO ORDERED.**

---

**7.** To the best of the Court's knowledge, the IRS has not objected to this procedure in Chapter 7 cases. In Chapter 13 cases, which may require the redirection of tax refunds over a period of several years, the IRS has successfully challenged the authority of the bankruptcy court to enter and enforce orders compelling payment of tax refunds directly to trustees. *See United States v. Carroll (In re The Bankruptcy Court's Use of a Standardized Form of Chapter 13 Confirmation Order that Enjoins the Internal Revenue Service to Redirect Tax Refunds to Chapter 13 Trustees),* 423 B.R. 294 (E.D.Mich.2010).